UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SHANNON LEE H., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C25-5152-MLP <br><br> ORDER |

## I.    INTRODUCTION

Plaintiff seeks review of the denial of her applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by determining she did not meet a listed impairment and discounting her testimony and several medical opinions. (Dkt. # 9.) The Commissioner responds that the ALJ's decision is free of legal error, supported by substantial evidence, and should be affirmed. (Dkt. # 11.) Plaintiff filed a reply. (Dkt. # 12.) Having considered the ALJ's decision, the administrative record ("AR"), and the parties' briefing, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).[1]

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 3.)

ORDER - 1

## II. BACKGROUND

Plaintiff was born in 1976, has a high school education, and has no past relevant work. AR at 38. Plaintiff was last gainfully employed in 2019. *Id.* at 55.

In August 2020, Plaintiff applied for benefits, alleging disability as of February 3, 2019. AR at 154. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* After conducting a hearing in March 2022, the ALJ issued a decision in January 2023 finding Plaintiff was not disabled. *Id.* at 154-65, 1955-79. Plaintiff appealed to the Appeals Council, which vacated the decision and remanded to the ALJ for further proceedings. *Id.* at 173-75.

On remand, Plaintiff amended her alleged onset date to March 2021. AR at 24, 433. After a hearing in May 2024, the ALJ again found Plaintiff not disabled. *Id.* at 24-40, 49-72. Using the five-step disability evaluation process,[2] the ALJ found, in pertinent part, Plaintiff had severe impairments of conversion disorder, degenerative disc disease, osteoarthritis, diabetes, obesity, depressive disorder, anxiety disorder, and personality disorder. *Id.* at 27. The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform light work, occasionally climbing and frequently balancing, stooping, kneeling, crouching, and crawling. *Id.* She could perform one to four step tasks with brief, superficial public interaction. *Id.*

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-3. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 1.)

---

[2] 20 C.F.R. §§ 404.1520, 416.920.

ORDER - 2

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may overturn the Commissioner's denial of social security benefits if the ALJ's decision rests on legal error or is not supported by substantial evidence. *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up). The Court must consider the record as a whole to determine whether it contains sufficient evidence to support the ALJ's findings. *Id.*

Although the Court evaluates the record as a whole, it is not permitted to reweigh the evidence or substitute its judgment for that of the ALJ. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). The ALJ is tasked with evaluating testimony, resolving conflicts in the medical evidence, and addressing ambiguities in the record. *Smartt*, 53 F.4th at 494-95. Where the evidence can be interpreted in more than one rational way, the ALJ's decision must be upheld. *Id.* Even if the ALJ erred, reversal is not warranted unless the error affected the outcome of the disability determination. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The party challenging the ALJ's decision bears the burden of demonstrating harmful error. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

### IV. DISCUSSION

**A.    The ALJ Did Not Err in Evaluating Listed Impairments**

At step two, the ALJ found Plaintiff's severe impairments included conversion disorder based on a diagnosis in March 2021. AR at 27 (citing *id.* at 1501). Plaintiff contends the ALJ erred at step three by failing to consider whether her conversion disorder met or equaled Listing 12.07. (Dkt. # 9 at 4.) The Commissioner contends Plaintiff cannot show harmful error because

the ALJ performed the appropriate analysis when finding Plaintiff did not meet or equal Listings 12.04, 12.06, or 12.08. (Dkt. # 11 at 2-3.)

At step three, if the ALJ determines a claimant's impairment or impairments meet or equal a listed impairment, the claimant is found disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Listing 12.07 requires *both* medical documentation of certain symptoms under "paragraph A" *and* satisfaction of the "paragraph B" criteria. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.07. Plaintiff points to evidence that the paragraph A criteria were met, but no evidence of the paragraph B criteria. (Dkt. # 12 at 2 (citing AR at 1171, 1179-81).)

The paragraph B criteria for 12.07 are identical to the paragraph B criteria for Listings 12.04, 12.06, and 12.08. Specifically, all four listings require "[e]xtreme limitation of one, or marked limitation of two," of four areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04, 12.06, 12.07, 12.08.

In his analysis of Listings 12.04, 12.06, and 12.08, the ALJ evaluated the paragraph B criteria and found Plaintiff had only mild or moderate limitations in all four areas. AR at 28-29. As the Commissioner notes, Plaintiff did not challenge any of these findings. (Dkt. # 11 at 3.) On reply, Plaintiff contends that because the ALJ did not specifically consider Listing 12.07, there was "no analysis for Plaintiff to challenge[.]" (Dkt. # 12 at 2.) This argument elevates form over substance. The ALJ performed a single analysis of the paragraph B criteria for Listings 12.04, 12.06, and 12.08 because the criteria are identical for all of them. Plaintiff fails to offer any evidence that the ALJ would have, or even could have, come to a different conclusion for Listing 12.07, which requires the same paragraph B criteria. The claimant bears the burden of

ORDER - 4

establishing she meets a listing. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). Plaintiff has not met that burden. The Court concludes the ALJ did not harmfully err in considering whether Plaintiff's conditions met or equaled a listed impairment.

      **B.**      **The ALJ Erred in Evaluating Medical Evidence**

Under regulations applicable to this case, the ALJ is required to articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are supported and consistent with the record. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). These findings must be supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

      *1.*      *Kimmy G. Su, M.D., Ph.D.*

In May 2024, Dr. Su, Plaintiff's treating neurologist, stated in a letter that Plaintiff suffered from "degenerative changes in her back and hip contributing to chronic pain issues as well as functional neurologic disorder."[3] AR at 1953. Dr. Su opined that these conditions prevented Plaintiff from performing full-time work even at the sedentary level. *Id.* Specifically, she was unable to perform a job requiring her to sit six hours per day, stand and walk two hours per day, and lift ten pounds occasionally. *Id.*

The ALJ found Dr. Su's opinion unpersuasive for several reasons, none of which are supported by substantial evidence. AR at 36. First, Dr. Su noted that she had been treating Plaintiff since August 2021 and had "reviewed [Plaintiff's] entire medical records in the course of [her] treatment of her." *Id.* at 1953. The ALJ found it was "unclear" what records Dr. Su reviewed "or whether she refers to records outside of her specialty areas." *Id.* at 36. The Commissioner speculates that "there were records outside of her specialty—e.g., counseling

---

[3] The parties agree that functional neurological disorder is identical to conversion disorder. (*See* dkt. ## 9 at 6, 11 at 13.)

records—not referenced by Dr. Su" (dkt. # 11 at 11), but fails to explain why this would undermine her opinion. Because Dr. Su was treating Plaintiff for conversion disorder, defined as a mental impairment under Social Security regulations, counseling records are relevant to Dr. Su's treatment. *See, e.g.*, AR at 1548; 20 C.F.R. pt. 404 Subpt. P, App. 1 § 12.00B(6)(a). As the Commissioner regularly argues in briefing before this Court, "a duly licensed physician . . . can practice and render psychiatric services[.]" *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). The ALJ's skepticism regarding the scope of Dr. Su's record review is thus unfounded.

Second, the ALJ found Dr. Su's opinion, "noting generally pain[,]" inconsistent with observations that Plaintiff was in no acute distress. AR at 36 (citing *id.* at 1380-1478, 1498-1583, 1789-1952). At some appointments where Plaintiff was described as not in acute distress, she had an "antalgic," *i.e.*, painful, gait. *Id.* at 1424, 1426, 1560-61. At another appointment noting no acute distress, Plaintiff was being treated for a centimeter-long "laceration into subcutaneous tissue" on her finger. *Id.* at 1722. These examples illustrate that the absence of acute distress does not negate the presence of pain, undermining the ALJ's rationale.

Third, the ALJ asserted Dr. Su's opinion, which did not mention a cane or walker, was inconsistent with Plaintiff's reported need for a walker, implying a disagreement between them. AR at 36. This is contradicted by Dr. Su's express advice to Plaintiff to "[k]eep being careful when you walk. Use your cane and take your time!" *Id.* at 1550. The Commissioner does not defend this reason and it is not a valid reason to discount Dr. Su's opinion.

Fourth, the ALJ found Dr. Su's opinion regarding pain from degenerative back and hip changes was unsupported by records showing no significant spinal stenosis, normal electromyogram and nerve conduction studies, and full motor strength. AR at 36 (citing *id.* at 1426, 1439, 1460, 1514-15, 1530-31). The ALJ found that such diagnostic studies did not fully

ORDER - 6

explain Plaintiff's symptoms, "leading to an impression of conversion disorder." *Id.* The ALJ found it inconsistent to opine "work-preclusive limitations" for a patient with "only a last resort diagnosis of functional neurological disorder," and thus assumed that Dr. Su relied on Plaintiff's "subjective complaints." *Id.*

This reasoning misconstrues the nature of conversion disorder. Social Security regulations recognize it as a valid impairment that can be disabling. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.07. The very definition of conversion disorder requires that symptoms *cannot* be fully explained by other medical conditions. Conversion disorder and related disorders are mental impairments "characterized by physical symptoms or deficits that are not intentionally produced or feigned, and that, following clinical investigation, cannot be fully explained by a general medical condition, another mental disorder, the direct effects of a substance, or a culturally sanctioned behavior or experience." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00B(6)(a). Therefore, the fact that Plaintiff's diagnostic studies did not fully explain her symptoms supports rather than undermines Dr. Su's opinion.

Finally, the ALJ found Plaintiff's physical therapy "helping with her gait" inconsistent with Dr. Su's opinion. AR at 36. Dr. Su stated in treatment notes that, although Plaintiff had tried many medications and was working with a pain clinic, physical therapy "has been the most helpful, and I have encouraged her to continue exercising regularly." *Id.* at 1515, 1531; *see also id.* at 1426, 1439 ("PT has reportedly helped"). That treatment has helped to some degree does not mean it has restored the functional limitations Dr. Su opined. While "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability[,]" *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017), "some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace." *Holohan*

*v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). A notation that physical therapy was "helpful" is not substantial evidence that Plaintiff's symptoms were substantially relieved.

The Commissioner's *post hoc* argument that Dr. Su did not provide "objective medical evidence" is improper. (Dkt. # 11 at 12.) The ALJ did not include this as a reason to discount Dr. Su's opinion and the Court cannot rely on it. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 1995).

In sum, the ALJ failed to provide valid reasons, supported by substantial evidence, to discount Dr. Su's opinion. On remand, the ALJ must reevaluate Dr. Su's opinion.

    2.    *Louis Enkema, M.D.*

In June 2022, Dr. Enkema examined Plaintiff and opined that she could stand or walk for four hours per day and sit for six hours, lift 15 pounds occasionally, and required a cane for walking more than 50 feet although the cane was not "medically necessary." AR at 1486, 1489-90. She could occasionally reach, handle, finger, operate foot controls, stoop, crouch, or crawl and never climb, balance, or kneel. *Id.* at 1487. He cited physical examination findings, obesity, and poor balance as supporting clinical findings. *Id.* at 1490.

The ALJ found Dr. Enkema's opinion "partially persuasive." AR at 37. The ALJ rejected the need for a cane, stand/walk restrictions beyond those for light work, which requires a "good deal" of walking or standing, and postural limitations beyond those in the RFC. 20 C.F.R. §§ 404.1567(b), 416.967(b); AR at 37. The ALJ found these limitations inconsistent with physical examination findings and Plaintiff's ability to drive.[4] AR at 37.

---

[4] The Commissioner indicates the ALJ rejected Dr. Enkema's opinion based on improvement with treatment and findings of no acute distress, but those were reasons the ALJ cited in support of accepting the remaining portions of Dr. Enkema's opinion. (Dkt. # 11 at 14 (citing AR at 37).)

ORDER - 8

The ALJ's finding of inconsistency with medical evidence is not supported by substantial evidence, given the ALJ's failure to adequately consider conversion disorder. As discussed above, the ALJ must address whether Plaintiff's conversion disorder causes functional limitations beyond what examination findings can explain.

The ALJ reasoned that driving requires bending, using legs and feet to operate pedals, reaching, handling, and fingering. AR at 34. Because Dr. Enkema opined Plaintiff could perform all of those actions on an occasional basis, Plaintiff's ability to drive does not contradict his opinion. The Court concludes the ALJ erred by discounting Dr. Enkema's opinion.

        3.     *Merry Alto, M.D., and Charles Murphy, M.D.*

The ALJ found persuasive the State agency consultants' October 2020 and July 2021 opinions that Plaintiff could perform light work, occasionally climbing and frequently balancing, stooping, kneeling, crouching, and crawling. AR at 36-37 (citing *id.* at 82-83, 96-97, 116-18, 139-41). The ALJ "considered the amended alleged onset date" of March 2021 but maintained these opinions were "consistent with the later records[.]" *Id.* at 37. The ALJ did not address whether Drs. Alto's and Murphy's opinions were consistent with the records regarding Plaintiff's conversion disorder, however, diagnosed in March 2021. *Id.* at 36-37. Because the ALJ did not adequately analyze conversion disorder, the ALJ's consistency finding is not supported by substantial evidence. On remand, the ALJ must reassess these opinions.

        4.     *David Mashburn, Ph.D.*

In March 2021, Dr. Mashburn examined Plaintiff and opined she would have severe limitations in maintaining punctual attendance, maintaining appropriate behavior, and completing a normal work day and work week. AR at 1366-67. The ALJ found Dr. Mashburn's

opinion unsupported by his own examination findings and inconsistent with Plaintiff's improvement with medication and generally benign mental status results. *Id.* at 37.

While Dr. Mashburn observed both normal and abnormal findings, the ALJ did not adequately explain how the mix of results failed to support Dr. Mashburn's opinion. AR at 1366, 1368. Improvement with treatment, however, was a valid reason to discount Dr. Mashburn's opinion of disabling mental limitations. *Id.* at 37. In May 2022, Plaintiff reported to her therapist that she was "starting to feel better both emotionally and physically" after just one month on a new medication. *Id.* at 1645. In an August 2021 disability report, Plaintiff acknowledged medication and therapy were "helping" with mental health issues although some symptoms remained present. *Id.* at 520. The Court concludes the ALJ did not err by discounting Dr. Mashburn's opinions.

Plaintiff notes Dr. Mashburn failed to diagnose conversion disorder even though she told him she was diagnosed with conversion disorder for pseudo seizures, and argues the ALJ erred by failing to address conversion disorder with regard to Dr. Mashburn's opinion. (Dkt. # 9 at 14.) As discussed above, however, although conversion disorder is a mental impairment, it is "characterized by physical symptoms or deficits[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00B(6)(a). The ALJ's failure to address conversion disorder with regard to Dr. Mashburn's opinion was not harmful error, as Dr. Mashburn's report did not address physical symptoms such as seizures.

5.   *Susan Burke, Psy.D., and Dana Harmon, Ph.D.*

In February 2023, Dr. Burke examined Plaintiff and opined she had mostly moderate limitations, with marked limitations in maintaining punctual attendance, maintaining appropriate behavior, and completing a normal work day and work week. AR at 1590. Dr. Burke estimated

ORDER - 10

these limitations would last nine to twelve months with available treatment. *Id.* at 1591. Dr. Harmon reviewed Dr. Burke's report, concurring with the marked functional limitations but opining that a nine-month duration was more accurate. *Id.* at 1584-86.

The ALJ appears to have accepted the moderate limitations and nine-month duration, while rejecting the marked limitations. AR at 38. The ALJ cited Plaintiff's improvement with treatment, *see id.* at 1645, and relatively benign clinical presentation as reasons to discount the marked limitations opined by Drs. Burke and Harmon. *Id.* at 38 (citing *id.* at 986, 1669, 1676, 1681, 1689, 1696, 1791, 1805, 1811, 1824, 1828, 1840, 1848-49, 1854, 1861, 1866). For example, Dr. Burke's observation of poor insight and judgment was contradicted by normal findings throughout the longitudinal record. *See id.* Substantial evidence supports the ALJ's reasoning.

Plaintiff points to Dr. Harmon's speculation that Plaintiff's "medical difficulties and chronic pain" might cause disability for longer than twelve months. (Dkt. # 9 at 15 (citing AR at 1585).) These statements were not part of Dr. Harmon's opinion, however, and Dr. Harmon expressly stated that such a determination was outside her purview. AR at 1585. Plaintiff further argues that other doctors came to the same conclusions as Drs. Burke and Harmon, but the ALJ reasonably discounted those opinions. (*See* dkt. # 12 at 8.) The Court concludes the ALJ did not err by discounting Drs. Burke's and Harmon's opinions.

      6.  *Beth Fitterer, Ph.D., and Susan Daugherty, Ph.D.*

The ALJ found persuasive the State agency consultants' October 2020 and July 2021 opinions that Plaintiff was no more than moderately limited in any area of mental capacity. AR at 37 (citing *id.* at 84-85, 98-99, 119-21, 142-44). The ALJ found the opinions consistent with

Plaintiff's treatment, ability to guide her adult autistic children and drive, and intact mental status. *Id.*

An ALJ is not required to provide reasons in support of accepting a medical opinion. *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010). Plaintiff argues the opinions of Drs. Burke, Harmon, Mashburn, and VanFossen are more persuasive. (Dkt. ## 9 at 16, 12 at 9.) The ALJ did not err by discounting these opinions, however, and thus has resolved any conflict between them and Drs. Fitterer's and Daugherty's opinions. *See Smartt*, 53 F.4th at 494 (ALJ has exclusive role in resolving ambiguities in medical evidence).

### C. The ALJ Did Not Err in Evaluating Plaintiff's Testimony

Absent evidence of malingering, an ALJ is required to provide clear and convincing reasons for discounting a claimant's testimony. *See Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017). That said, the ALJ is not required to believe every allegation, nor to analyze testimony line by line. *See Ahearn*, 988 F.3d at 1116; *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The question is not whether this Court is convinced, "but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

Plaintiff testified that pain prevents her from walking even a city block or sitting for 30 minutes. AR at 57. Her knees will "give out" after about 15 minutes standing. *Id.* at 56-57. She uses a cane or walker when out for extended periods of time. *Id.* at 54-55, 1971. Plaintiff's daily pain level is generally five or six out of ten. *Id.* at 62. She testified that she might be able to perform an eight-hour work day at a job that permitting sitting and standing at will for one day, but would have to be in bed the next day to recover. *Id.* at 58, 61. Two adult daughters live with Plaintiff and help her with lifting things, laundry, cooking, and grocery shopping. *Id.* at 60, 1969-

70. She reported her mental impairments caused severe depression, irritability, and outbursts, along with difficulty focusing. *Id.* at 59-60, 482, 493.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" AR at 31. However, the ALJ discounted Plaintiff's testimony as inconsistent with objective medical evidence, improvement with treatment, ability to drive, and a situational component to mental impairments. *Id.* at 31-36.

The ALJ discounted Plaintiff's physical symptom testimony as inconsistent with her "performance in physical examinations" and "out of proportion with workup findings." AR at 31-32. As noted above, however, conversion disorder can only be diagnosed when symptoms are out of proportion with diagnostic findings. The ALJ's only analysis of conversion disorder is limited to stating that Plaintiff's providers "rarely observed episodes of her conversion disorder." AR at 35 (citing *id.* at 1849). The ALJ cited a single treatment note where a therapist stated Plaintiff did not appear to experience episodes during *that* session. *Id.* at 1849; *but see id.* at 1594 ("the stress is what is sending her body into spasms"), 1595 (Plaintiff "began having a physical reaction (spasming and twitching)" during therapy). This single statement is insufficient for meaningful review. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). Because the ALJ inadequately analyzed the effects of Plaintiff's conversion disorder, conflict with medical evidence was not a valid reason to discount Plaintiff's physical symptom testimony.

The ALJ did, however, provide valid reasons of improvement with treatment and conflict with activities to discount Plaintiff's pain testimony. Joint injections together with medication provided substantial relief. In October 2020, Plaintiff received bilateral sacroiliac injections that "worked well," providing 100% pain relief on the left and 85% on the right. AR at 1031. Plaintiff reported 70% pain relief from a combination of medication and sacroiliac injections in

ORDER - 13

November 2020, and 60% in December 2020. *Id.* at 1035. Relief lasted a few weeks. *Id.* at 1039. Plaintiff had nerve block procedures in January and February 2021, which brought significant pain relief for a short time. *Id.* at 1043-47. Another sacroiliac injection in February 2021 provided "well over 50% pain relief which she is very pleased with" lasting six weeks. *Id.* at 1053, 1062. She had another injection in May 2021. *Id.* at 1068. In January 2022, steroid injections "helped with low back pain." *Id.* at 1573. In February 2022, Plaintiff reported she had been receiving joint injections for her chronic right hip pain that were "somewhat helpful but don't last enough" to be worth continuing. *Id.* at 1572-73. In September 2022, Plaintiff reported receiving a right trochanteric steroid injection the day before that had not "kicked in yet." *Id.* at 1546. In January 2024, Plaintiff told her therapist that she had just received bilateral SI joint injections and "should now have a good two-to-three weeks where she will be almost pain free" once it took effect. *Id.* at 1865. Plaintiff does not challenge the ALJ's finding of improvement with treatment, and the Court concludes substantial evidence supports it.

The ALJ also found Plaintiff's pain testimony inconsistent with her activities, including driving, spending a weekend camping in September 2022, and a weekend of spring cleaning in March 2024 even though her back pain was returning because the injection was wearing off. AR at 33 (citing *id.* at 1662, 1893). Plaintiff challenges only the ALJ's finding on driving. (Dkt. # 9 at 8.) Setting aside driving, the ALJ reasonably found camping and spring cleaning inconsistent with Plaintiff's testimony of extreme limitations.

Regarding mental symptoms, the ALJ discounted Plaintiff's testimony based on minimal abnormal psychiatric observations, improvement with treatment, and a situational component. AR at 35-36. The ALJ noted Plaintiff consistently demonstrated emotional regulation in therapy sessions, undermining her testimony of irritability and lashing out. *Id.* at 35 (citing *id.* at 1647,

ORDER - 14

1649, 1651, 1654, 1656, 1661, 1670, 1672, 1677). Moreover, in May 2022, Plaintiff reported to her therapist that she started "a new medication one month ago to help stabilize her mood" and was "starting to feel better both emotionally and physically." *Id.* at 1645. In an August 2021 disability report, Plaintiff acknowledged medication and therapy were "helping" with mental health issues although some symptoms remained present. *Id.* at 520.

Plaintiff fails to explain how any remaining symptoms were not accommodated by the RFC limitations to four-step tasks and minimal public interaction. AR at 29. Plaintiff thus fails to identify harmful error. The Court concludes that contradiction with medical evidence and improvement with treatment were sufficient reasons to discount Plaintiff's mental symptom testimony.

D.    **Plaintiff Fails to Establish Any Additional Errors**

Plaintiff argues the ALJ did not account for the effect of Plaintiff's conversion disorder on her ability to stand and walk. (Dkt. # 9 at 17.) As discussed above, on remand the ALJ must reassess the effect of conversion disorder on Plaintiff's physical limitations.

Plaintiff next argues that her obesity imposes greater postural limitations than, for example, climbing occasionally and crawling frequently. (Dkt. # 9 at 17.) The ALJ stated he "considered [obesity] and its effect on the claimant's physical functioning by limiting her [to] light work with postural restrictions." AR at 32. Plaintiff fails to identify any specific evidence that the ALJ improperly rejected or misevaluated. *See Broom v. Colvin*, 2015 WL 1180514, at *4 (C.D. Cal. Mar. 13, 2015) (affirming where there was "no evidence of any functional limitations due to obesity that the ALJ failed to consider").

Plaintiff argues the "law of the case" required the ALJ to incorporate a sit-stand option from his January 2023 decision. (Dkt. # 9 at 17.) The Appeals Council vacated that decision in

ORDER - 15

part because the assessed RFC provided that Plaintiff "needs the option to sit and stand at will" but did not specify the frequency. AR at 173. The Appeals Council's order did not require the ALJ to retain the sit-stand option. Moreover, the law of the case applies to court instructions to the agency, not interagency instructions. *See Ischay v. Barnhart*, 383 F. Supp. 2d 1199, 1216 (C.D. Cal. 2005) ("law of the case precluded re-litigation of issues settled by the *district court's* prior order" (emphasis added)).

Finally, Plaintiff argues the "moderate" limitations in concentration, persistence, and pace opined by Drs. Fitterer and Daugherty required greater RFC restrictions. (Dkt. ## 9 at 18, 12 at 9-10.) The Ninth Circuit held in an unpublished decision that an RFC limited to "simple, repetitive work" did not adequately capture "moderate difficulty maintaining concentration, persistence, or pace." *Brink v. Comm'r Soc. Sec. Admin.*, 343 F. App'x 211, 212 (9th Cir. 2009). Here, Drs. Fitterer and Daugherty opined Plaintiff was "[m]oderately limited" in her "ability to maintain attention and concentration for extended periods." AR at 84, 98, 119, 142. They further explained that Plaintiff was "[a]ble to perform at least 1-4 step tasks in a competitive work environment despite occasional [concentration, persistence, and pace] limitations." *Id.* at 84-85, 98, 120, 143. The ALJ incorporated the opined limitations precisely into the RFC, restricting Plaintiff to "1 to 4 step tasks[.]" *Id.* at 29. Plaintiff fails to establish any conflict between the doctors' opinions and the RFC.

E.    **Scope of Remand**

Remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). Plaintiff makes no attempt to establish extraordinary circumstances here that would warrant remand for benefits, but simply recites the elements that the record is fully developed, the ALJ

ORDER - 16

provided legally insufficient reasons for rejecting evidence, and the improperly rejected evidence would establish disability as a matter of law. (*See* dkt. # 9 at 18.) This is inadequate. The Court concludes further administrative proceedings are warranted.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reevaluate the opinions of Drs. Su, Enkema, Alto, and Murphy, reassess the RFC as appropriate, and proceed to step five as necessary.

Dated this 30th day of September, 2025.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 17